IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANTE R. VOSS,

                Plaintiff,

    v.

MARATHON COUNTY, SCOTT R. PARKS,
SANDRA LA DU-IVES, LINCOLN COUNTY,
JEFF JAEGER, DAVE MANNINEN,
CORRECT CARE SOLUTIONS, JORGE DOMINICIS,
RUSSELL CREEL, HOLLY MARON,
KRISTIN GAICHE, JESSE BORCHARDT,
JOHN MEIXNER, and AMY KUBISIAK,

                Defendants.

OPINION and ORDER

18-cv-540-jdp

---

       Plaintiff Dante Voss was incarcerated at the Marathon County and Lincoln County jails multiple times between 2015 and 2017. He contends that he didn't receive adequate medical care for his chronic pain at either facility, in violation of the U.S. Constitution and Wisconsin common law. Defendant Correct Care Solutions, a private company, provides medical care services at both jails.

       Defendants have moved for summary judgment in three groups: (1) Correct Care and its employees: CEO Jorge Dominicis, nurse practitioner Russel Creel, and nurses Holly Maron, Jesse Borchardt, Amy Kubisiak, Kristen Gaiche, and John Meixner, Dkt. 211; (2) Marathon County and its employees: Sheriff Scott Parks and jail administrator Sandra La Du-Ives, Dkt. 228; and (3) Lincoln County and its employees: Sheriff Jeff Jaeger and jail administrator Dave Manninen, Dkt. 220. Voss doesn't oppose Correct Care's motion as it relates to Borchardt, Kubisiak, Gaiche, and Meixner, so I will dismiss those defendants.

Voss contends that many aspects of his care violated the Constitution, but as will be discussed below, only a smaller subset of issues are properly before the court: (1) whether Voss was denied narcotic medication in June and July 2015 because of an unconstitutional policy; (2) whether defendant Creel violated the Constitution by refusing to order an MRI or refer Voss to specialist, and whether an unconstitutional policy contributed to that decision; (3) whether Voss was denied migraine medication and muscle relaxers because of an unconstitutional policy; and (4) when defendant Maron violated the Constitution by refusing Voss's request for a second mattress. I conclude that defendants are entitled to summary judgment on each of these claims. And because I am dismissing all of Voss's federal claims, I decline to exercise supplemental jurisdiction over Voss's state-law claims.

Also before the court are several motions that Voss has filed to sanction defendants, to seal records, to compel discovery, and for leave to file a reply brief. With exception of the requests to file a reply brief and to seal records, I will deny Voss's motions.

ANALYSIS

## A.  Voss's preliminary statement

Voss begins each of his opposition briefs with a "preliminary statement" in which he "formally objects to having a non-extendable deadline" for responding to defendants' summary judgment motions. *E.g.*, Dkt. 274, at 1. Voss doesn't explain what he means by "non-extendable deadline." His original summary judgment deadline was July 1, 2020 (30 days after defendants filed their motions), but I extended his deadline to September 3, *see* Dkt. 257, and then to September 11, Dkt. 280. So he had more than three times the amount of time than most pro se litigants have to file a summary judgment response. In any event, despite contending

generally that he didn't have enough time to prepare his summary submissions, Voss doesn't identify any specific changes to his submissions that we would have made if he had more time. So Voss's objection is overruled.

## B. Scope of the claims

There are two sets of issues included in Voss 's summary judgment filings that aren't properly before the court. First, Voss's summary judgment materials include discussions of issues that are outside the scope of this case. Second, I conclude that I erred in finding in a previous order that Voss had exhausted his administrative remedies for one of his federal claims.

### 1. Issues outside the scope of the lawsuit

Voss is proceeding on claims that: (1) an unconstitutional policy prevented him from obtaining narcotic pain medication at the Marathon County jail June 2, and June 16–30, 2015; (2) defendants at both the Marathon County jail and the Lincoln County denied Voss's requests for an MRI and failed to provide any effective treatment for his shoulder, neck, back, and hip pain; (3) from July 31 to August 3, 2017 and from December 14 to 18, 2017, Correct Care nurses denied Voss his prescription muscle relaxer and migraine medication because of policies that restricted medication distribution; and (4) in July, August, and December 2017, Maron denied Voss's request for a second mattress. *See* Dkt. 116.

Voss devotes much of his summary judgment materials to other issues. For example, he challenges the medical care he received at Waupaca County jail. But I denied Voss's request for leave to amend his complaint to add those claims. Dkt. 184, at 10. Voss also challenges the refusal to prescribe valium for him, but that claim has been dismissed. *See* Dkt. 116, at 8 and Dkt. 184, at 10. Voss's position now seems to be that the dismissal was limited to prescribing

3

valium for psychiatric reasons, and he is alleging that he should have received valium for nerve pain. But the dismissed claim was the failure to prescribe valium; the reason wasn't relevant. So I won't consider that issue or any other issues that are outside the scope of the claims on which Voss is currently proceeding.

### 2. Exhaustion

Defendants previously moved to dismiss some of Voss's claims for his failure to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). I concluded that Voss exhausted claim (2) identified above based on a grievance in which Voss wrote the following: "my shoulder was injured by jail staff and it still bothers me and the doctor told me he cant send me for an mri because of the cost. i shouldnt have to live in pain daily due to policies and procedures set forth by the jail whether it's a written policy or unwritten and followed." Dkt. 86-2, at 21.

Upon further consideration, it was a mistake to construe the grievance so broadly as encompassing *all* of claim (2). The only issue raised by the grievance is the failure to refer Voss for an MRI of his shoulder. That is part of claim (2), but Voss's summary judgment filings make it clear that he is also raising numerous challenges about decisions made by nurse practitioner Creel regarding how to manage Voss's pain. The above grievance would not have given the jail notice that Voss was challenging decisions about pain medication or about treatment for any condition other than shoulder pain. *See Strong v. David*, 297 F.3d 646 (7th Cir. 2002) ("[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.").

Voss also relies on an earlier grievance, in which he wrote that "the doctor tells me he can not send me out for the medical treatment i need because it is too expensive and the jail

will not allow it. your officers are the one's who injured me and I should not have to have my medical treatment compromised because of jail policies and procedures that violate my constitutional rights." Dkt. 86-2, at 20. That grievance is broad enough to encompass a claim about a failure to refer Voss to a specialist, but, again, it says nothing about pain management, and it says nothing about an MRI of his hip, back, or neck.

Voss is proceeding on two other claims about medication: (1) an unconstitutional policy prevented him from receiving narcotics when he was first held at the Marathon County jail in June and July 2015; and (2) for a few days in 2017, he was denied a muscle relaxer and migraine medication because of policies that restricted medication distribution. But there is no grievance for either claim that would encompass a more general allegation that defendants weren't providing adequate pain management in 2016 and 2017. In fact, Voss didn't file a grievance for either claim. As for the claim about narcotics, defendants withdrew their exhaustion motion on that claim after Voss alleged that he wasn't in custody long enough at that point to file a grievance after trying to resolve the complaint informally. *See* Dkt. 99, ¶ 3 and Dkt. 100, at 5. As for the claim about distributing migraine medication and muscle relaxers, I concluded that defendants had failed to show that Voss had the ability to file a grievance during the short amount of time that he was in the Marathon County jail from July 31 to August 3, 2017 and again from December 14 to December 18, 2017. Dkt. 116, at 7.

Those arguments do not apply to Voss's allegations about pain management because he was in custody for several months in 2016 and early 2017. It is clear that he could have filed a grievance during that time because he *did* file grievances during that time, including the two noted above.

Neither side has identified any grievance in which Voss complained about what medication he should be receiving or an MRI for anything other than his shoulder. So I will dismiss for failure to exhaust Voss's federal claims related to pain management (with the exception of his claim about narcotics in June and July 2015 and his muscle relaxer and migraine medication in 2017), and for an MRI of anything other than Voss's shoulder. Section 1997e(a) is limited to federal claims, so this conclusion doesn't apply to any state-law claims.

## C. Eighth Amendment vs. Fourteenth Amendment

I turn now to the merits, beginning with Voss's federal claims. Different standards apply to an incarcerated person's medical-care claims brought under the Constitution depending on the legal status of the plaintiff: the Eighth Amendment governs medical claims of convicted prisoners, and the Due Process Clause of the Fourteenth Amendment governs claims of pretrial detainees. *See Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). The different standards are based on the different legal process that a person in each situation has received. *See Currie v. Chhabra*, 728 F.3d 626, 629–31 (7th Cir. 2013).

In this case, Voss was incarcerated several times between 2015 and 2017. Voss was first arrested and released in 2015. In January 2016, he pleaded no contest to a felony, but he was sentenced to probation. He was rearrested and detained in June 2016. On January 23, 2017, his probation was revoked, and he was sentenced to prison. The parties agree that the Due Process Clause applies to Voss's claims from 2015, and that the Eighth Amendment applies to Voss's claims arising after January 23, 2017. But neither side cites any authority on the question whether a person arrested for a probation violation should be treated as a convicted prisoner or a pretrial detainee before his probation is revoked. The court of appeals doesn't appear to have resolved the issue.

6

In *Palmer v. Marion Cty.*, 327 F.3d 588, 592–93 (7th Cir. 2003), the court observed that the difficulty arises because a person arrested for a probation violation has been convicted, but he is also awaiting adjudication of his probation violation, much like a pretrial detainee. The court didn't decide whether the Eighth Amendment or the Due Process Clause should apply because it didn't make a difference to the outcome of the case. *Id.* at 593. More recently, the court of appeals declined to decide the similar question whether the Eighth Amendment or the Due Process Clause applies to a person who is in custody awaiting a hearing on a violation of his extended supervision, again because the issue wasn't dispositive. *Estate of Clark v. Walker*, 865 F.3d 544, 546 n.1 (7th Cir. 2017). District courts have reached different conclusions about which amendment should apply to a probationer. *See Rosenblum v. Blackstone*, No. SA CV 18-966-JVS(E), 2020 WL 1049916, at *10 (C.D. Cal. Jan. 22, 2020) (collecting cases).

I am inclined to apply the Due Process Clause to claims brought by probationers who are in custody awaiting a revocation hearing. Although Voss was already convicted of a crime in 2016, he was taken into custody because of new alleged misconduct, not as a direct result of the conduct for which he was convicted, so it makes sense to treat him as a pretrial detainee. In any event, the difference between the Eighth Amendment and the Due Process Clause isn't dispositive in this case.

So I will apply the Due Process Clause to conduct that that occurred before January 23, 2017, and the Eighth Amendment to conduct that occurred later.

## D. June 2015 and July 2015 incarcerations at the Marathon County jail

Voss is proceeding on a claim against Marathon County, Correct Care Solutions, Jorge Dominicis, Scott Parks, and Sandra La Du-Ives that he was denied narcotic pain medication at the Marathon County jail on June 2, 2015, and again between June 16 and 30, 2015 because

of an unconstitutional policy of Marathon County, Correct Care or both that prohibits prescriptions for narcotics for anyone who isn't recovering from surgery. Voss says that his claim is limited to challenging the alleged policy; he isn't challenging "individual decisions" denying his requests for narcotics in July 2015. Dkt. 274, at 8. He is suing the CEO, the sheriff, and the jail administrator in their official capacity because he believes that they are at least partly responsible for the alleged policy.

### 1. Background

The following facts are undisputed, unless otherwise noted.

On June 2, 2015, Voss was arrested and booked at the Marathon County jail. He was released on June 3. Voss didn't submit a written request for any medical care during this time. He says that he asked an unidentified nurse for hydrocodone, but she told him that "narcotics were not allowed in the facility due to jail policy." Dkt. 277, ¶ 17. Defendants have no record of this request.

Voss returned to the Marathon County jail on July 16. The following day, a jail physician (not a defendant) prescribed ibuprofen for pain. On July 20, Voss submitted a "Sick Call Request" asking to receive Norco (a combination of acetaminophen and hydrocodone) for "chronic low back pain." The following day, the physician prescribed 500 mg of naproxen (a nonsteroidal anti-inflammatory drug) and Cyclobenzaprine (a muscle relaxer).

In a July 29 sick-call request, Voss complained that he continued to suffer from low-back pain. He asked for a second mattress, and he noted that he had taken Norco before he was in custody. The same day, the physician approved a second mattress, and he said that he could prescribe a lidocaine patch.

Voss was released on July 30.

2. **Legal standard**

A constitutional claim against a municipality or a corporation has two parts. First, Voss must show that the decision to deny him narcotics was unconstitutional. Second, he must show that the constitutional violation was the result of an official policy, a custom, or a decision by a "final decisionmaker," that is, someone who has the final say on policy. *See Pulera v. Sarzant*, 966 F.3d 540, 555 (7th Cir. 2020). The same standard applies to both the county and Correct Care. *See Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017).

As discussed above, the Due Process Clause applies to this time period. Under the Due Process Clause, the questions are whether: (1) whether the defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [the plaintiff's] case"; and (2) whether the defendant's actions were "objectively reasonable." *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (internal quotations omitted). The question whether conduct is reasonable is a relatively straightforward question. But it is less clear what it means to say that a defendant must have a certain mental state when considering the consequences of their actions.

It could simply mean that the defendant must make a conscious decision to provide or withhold care. *See Miranda v. Cty. of Lake,* 900 F.3d 335, 354 (7th Cir. 2018) (suggesting that first element wouldn't be satisfied if the defendant had "forgotten" about the plaintiff); *cf. Kingsley v. Hendrickson*, 576 U.S. 389, 395–96 (2015) (suggesting that first element on a detainee's excessive force claim is met if defendant's conduct was "deliberate" rather than accidental). Or it could mean that the defendant must be aware that the plaintiff needs medical treatment. *See Miranda*, 900 F.3d at 354 (suggesting that first element wouldn't be satisfied if the defendant "mixed up [the plaintiff's] chart with that of another detainee"). Another reading

is that the defendant must be aware that that his or her course of conduct could harm the plaintiff. *See Pittman by & through Hamilton v. Cty. of Madison, Illinois,* 970 F.3d 823, 827–28 (7th Cir. 2020) (first element satisfied if the defendants "were aware that their actions would be harmful" or if they "strongly suspected that their actions would lead to harmful results"); *McCann*, 909 F.3d at 886–87 (first element not met because "nothing shows that [the defendant] foresaw or ignored the potential consequences of her actions—McCann's dying from the over-prescription of methadone"); *Ferguson v. Cook Cty. Corr. Facility/Cermak*, No. 20-1185, – F. App'x –, 2020 WL 6689963, at *2 (7th Cir. Nov. 13, 2020) (first element not satisfied because the defendant's "actions reflect[ed] a concern for [the plaintiff] and his treatment"). *But see Williams v. Ortiz,* 937 F.3d 936, 942–43 (7th Cir. 2019) (summarizing first element to mean that the plaintiff "suffered from an objectively serious medical condition").

The third option—that the defendants must recklessly disregard a risk of harm—appears most consistent with the limited case law that has developed since the court of appeals adopted the new standard in *Miranda*. But I need not dwell on this issue because I conclude that no reasonable jury could find that the challenged medical decisions were objectively unreasonable. And because the medical decisions weren't unreasonable, there is no basis for holding the county, Correct Care, or any administrator liable either.

### 3. Merits

Defendants deny that they have a policy of denying narcotics except when a patient is recovering from surgery, and Voss acknowledges that he has no evidence of a written policy. But he says that he was "told by [Correct Care] nursing staff that Jail Administration and CCS policy did not allow inmates to have narcotic pain meds unless they just had surgery."

Dkt. 277, ¶ 14. He also says that defendant Creel told him the same thing after he was rearrested in 2016.

A statement by unnamed staff members is weak evidence of a policy. But I will assume for the purpose of defendants' motions for summary judgment that Creel's alleged statement would be admissible for the truth under Federal Rule of Evidence 801(d)(2)(D) as a statement of an agent within the scope of his employment. But even if an informal policy existed, Voss can't challenge a policy in the abstract. He must show that *his* rights were violated by the policy. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, (1986) ("If a person has suffered no constitutional injury . . . the fact that the departmental regulations might have *authorized* [unconstitutional conduct] is quite beside the point."). In other words, under the Due Process Clause, Voss must show at a minimum that it was objectively unreasonable to deny him narcotics in June and July 2015. But Voss has not even attempted to make that showing. As discussed above, he isn't challenging "individual decisions" denying him narcotics. So this claim fails.

In a section of his brief devoted to showing that Correct Care had a policy of denying narcotics, Voss says that the policy was "aggravated" by the fact that he had a prescription for hydrocodone before he was taken into custody. *Id.* at 20; *see also* Dkt. 277, ¶ 14. If Voss means to contend that he was constitutionally entitled to narcotics because he had a previous prescription, I disagree.

It is undisputed that Voss received pain medication in both June and July 2015. And when Voss complained that the medication he received was ineffective, the physician suggested a lidocaine patch. Voss was released the next day. It is true that Voss expressly requested a narcotic, but medical staff are entitled to deference when choosing an appropriate pain reliever.

11

*Cf. Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir. 1996) ("Using [pain killers] entails risks that doctors must consider in light of the benefits. . . . Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations."). And narcotics impose heightened risks of abuse and addiction, so it is appropriate for medical staff to be hesitant before prescribing them. *See McGhee v. Suliene,* No. 13-cv-67-bbc, 2014 WL 576150, at *11 (W.D. Wis. Feb. 12, 2014); *Banks v. Cox*, No. 09–cv–9–bbc, 2010 WL 693517, *7 (W.D. Wis. 2010); *DeBoer v. Luy*, No. 01–C–382–C, 2002 WL 32345414, *4 (W.D. Wis. 2002). I am not aware of any case in which this court, the Court of Appeals for the Seventh Circuit, or the Supreme Court has held that an incarcerated person was constitutionally entitled to narcotics.

In this case, Voss doesn't point to any evidence that he provided medical staff at the time showing that he had an existing prescription for Norco or hydrocodone. So all staff knew was that Voss wanted a narcotic, and that's not a basis for finding that any defendant acted unreasonably. *See Williams v. Ortiz,* 937 F.3d 936, 944 (7th Cir. 2019) ("[J]ust because the staff declined to provide him with his desired prescription pain medicine . . . does not mean that the course of treatment was objectively unreasonable."); *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("We routinely have rejected claims, however, where a prisoner's claim is based on a preference for one medication over another unless there is evidence of a substantial departure from acceptable professional judgment."). And even if staff had known that Voss had a prescription, medical staff were entitled to make their own assessment. *See Pulera v. Sarzant,* 966 F.3d 540, 552 (7th Cir. 2020) (rejecting claim that jail doctor violated the Due Process Clause by giving him a substitute for his prescription medication); *Burton v. Downey*, 805 F.3d 776, 785–86 (7th Cir. 2015) (doctor's refusal to prescribe narcotic didn't

12

violate detainee's constitutional rights, even though another doctor had prescribed it). Voss cites no evidence showing that he had a serious medical need for hydrocodone specifically, as opposed to a pain reliever generally. So defendants are entitled to summary judgment on this claim.

### E.  July 2016 to December 2016 incarceration at the Marathon County jail

Relevant to this time period, Voss contends that he didn't receive adequate pain medication, an MRI, or a referral to a specialist. As already discussed, Voss didn't exhaust his administrative remedies on a claim about pain management, so the claim is now limited to a refusal to order an MRI for his shoulder and refer Voss to a specialist. He asserts a claim against nurse practitioner Creel in his individual capacity, a claim against several administrators in their official capacity, and a claim for municipal liability against Correct Care and Marathon County based on alleged policies that prevented him from receiving care. Voss also says that he wants to assert a claim against defendant La Du-Ives (the jail administrator) in her personal capacity. I do not see a basis for such a claim in Voss's complaint, and he can't raise new claims at the summary judgment stage. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). But the claim also fails on the merits, for the reasons discussed below.

Voss's probation had not yet been revoked during this time period, so the Due Process Clause applies to these claims.

#### 1.  Background

The following facts are undisputed unless otherwise noted.

On July 4, Voss was booked into the Marathon County jail. During a medical screening, Voss told staff that he was suffering from pain in his right shoulder and left wrist, and that he was taking medications, but he didn't have any with him. Voss also said that his shoulder pain

13

was caused by excessive force and that he had been recently hospitalized as the result of a drug overdose.

Defendant Russel Creel, a nurse practitioner employed by Correct Care, prescribed 600 mg of ibuprofen, twice a day. Creel also says that he met with Voss and examined him, but Voss denies that.

On July 10, Voss submitted a sick-call request in which he wrote that "the officers messed up my shoulder i need surgery on [sic] and i need to be seen asap." Creel examined Voss on July 11, finding that Voss suffered from right shoulder and back pain. Creel prescribed 600mg of ibuprofen twice a day, 10 mg of cyclobenzaprine twice a day, an ice pack twice a day, and a second mattress. Creel says that he didn't believe opioids were appropriate for treating a chronic condition. Dkt. 289, ¶ 72.

Voss alleges that he had a lengthy discussion with Creel about pain in his shoulder, back, neck, and hip.[1] Relevant to this case, Voss says that he told Creel that a previous physician said that he would "order an MRI to see if I needed surgery or not." Dkt. 277, ¶ 13. As for Creel's response, Voss alleges that Creel said that an MRI of Voss's shoulder was "necessary," but Creel couldn't order an MRI "due to his employer and jail administration's policies on cost." *Id.*, ¶ 25.

---

[1] Voss doesn't allege specifically that the conversation occurred on July 11. Instead, he says that it occurred "[d]uring [his] first appointment with Defendant Creel." Dkt. 277, ¶ 13. Voss denies that Creel met with him on July 4, so presumably July 11 is the first appointment that Voss says he had with Creel. Voss includes a separate discussion in his declaration about the July 11 appointment, *id.*, ¶ 25, but I will assume that both paragraphs are referring to the same appointment because it doesn't make any difference to outcome of defendants' summary judgment motions when the alleged conversation occurred.

14

Creel asked Voss to complete a "Request for Information" form so Creel could obtain records showing whether Voss had any current referrals for specialized treatment. Voss later signed a form authorizing the release of records from Aspirus Stevens Point. Voss says that he verbally asked Creel to obtain medical records from other past providers, but Creel said that it would be "unnecessary" to obtain those records "because of jail administration and his employer's policies on cost." Dkt. 277, ¶¶ 25, 27. The records that Creel received from Aspirus didn't show any referrals for specialty care.

On July 15, Voss submitted a sick-call request asking to be seen by a physician for his shoulder. He sent a second request on July 18. When Creel attempted to meet with Voss, Voss declined, saying that he had to meet with his parole/probation officer. On July 21, Creel examined Voss. Creel says that the exam was limited to Voss's shoulder. He noted that Voss was in "no distress" and did not have any swelling or bruising. Creel reordered an ice pack and continued with the ibuprofen, meloxicam, cyclobenzaprine.

Voss says that he complained about pain in his back, hip, neck, *and* shoulder and that he asked Creel for a referral to a specialist. Dkt. 277, ¶ 32. Voss also says that Creel didn't examine his back, hip, or neck, and that he again told Voss that county and Correct Care policies prohibited the treatment he was requesting. *Id.*

On July 29, jail medical staff sent Voss to the emergency room after assessing Voss's vital signs when Voss complained of left arm pain. (Defendants don't explain specifically what triggered their belief that Voss required emergency care.) The hospital physician found no serious injury requiring immediate care, and he discharged Voss the same day with instructions to take ibuprofen and place a warm compress on his arm as needed.

15

On July 30, jail medical staff sent Voss to the emergency room again after he reported that he had suffered a seizure and experienced serious back pain associated with a "pop" in his back. After conducting an examination, taking x-rays of Voss's lumbar spine, taking a CT scan of Voss's cervical spine, and performing blood tests, the hospital physician concluded that the results were "unremarkable," that Voss's symptoms were "not consistent with true seizure" and that Voss likely was seeking "secondary gain." Dkt. 215-1, at 201–02. Voss told the physician that he needed a pain pump and cortisone injections, but the physician declined to prescribe either. He did provide Voss with one dose of Decadron to improve any pain that is "secondary to disc disease from his lack of lumbar mobility from his previous surgery." *Id.* at 202. Creel received and reviewed Voss's hospital records.

On August 1, Creel prescribed prednisone, a corticosteroid that Voss requested, for seven days. Creel says that he also met Voss on August 1, Dkt. 289, ¶ 114, but Voss denies that, Dkt. 277, ¶ 39.

On August 18, Creel met with Voss and examined him. Creel says that he saw no signs of distress, that Voss had no redness or swelling, and that Voss's right shoulder had a good "radial pulse." Voss says that he "yelp[ed]" in pain when Creel moved his shoulder into certain positions. Dkt. 277, ¶ 44. Creel continued the prescription for prednisone.

On September 8, Creel met with Voss again. He performed a physical exam, noting "mild tenderness to bilateral upper extremities" and "spinal tenderness." Dkt. 289, ¶ 133. Creel did not see any sign of an acute condition, so he did not believe that additional diagnostic assessment or specialty care was appropriate at that time. Creel continued with the prescription for prednisone for the next two weeks, but he decreased the dose every few days to taper Voss off the medication. According to Voss, he told he Creel that: (1) the prednisone was effective

16

on his right shoulder while at rest but not when he moved the shoulder "past certain points"; and (2) prednisone wasn't effective for back and hip pain. Dkt. 277, ¶ 47.

On September 9, Voss told a nurse that "his back went out on him" while going to the bathroom. Dkt. 289, ¶ 140. Creel prescribed 325 mg of Tylenol for five days. On September 15, Creel met with Voss, who said that a "disc has popped out of [his] back" and he was having "muscle spasms." *Id.*, ¶ 143. Creel noted that Voss was in "no distress" and was able to get up and down from the exam table without difficulty. Voss says that he did have difficulty and that he was grimacing in pain. Dkt. 277, ¶ 53. Creel ordered an x-ray of Voss's spine and prescribed cyclobenzaprine, a muscle relaxer.

The radiologist's report stated that there was "[n]o acute fracture or dislocation" in the thoracic spine. Based on that report, Creel concluded no additional treatment was appropriate at the time.

On September 30, Voss filed a grievance alleging that he was "overdue" for cortisone injections in his back and hip. Dkt. 289, ¶ 151. But Voss hadn't received cortisone injections at the jail before, and no one had ordered them for Voss.

On October 3, Creel met with Voss, who complained of a lower back pain that radiated down his legs. Creel noted that Voss was in "no distress" and was able to get up and down from the chair without difficulty. Voss says that he "rose slowly" and that his "face would distort from the pain." Dkt. 277, ¶ 61. Creel continued Voss's prednisone prescription for several more weeks, starting at 40mg and tapering it off to 10mg.

On November 16, the jail physician met with Voss about his complaints of pain. Voss asked for another prednisone prescription. The physician noted that Voss had no difficulty walking or sitting and rising from the chair. Voss says that he was limping and had difficulty

rising. The physician did not give Voss a prednisone prescription because he did not believe that it was "medically indicated." Dkt. 289, ¶ 171. Instead, he prescribed 650 mg of Tylenol.

On December 2, Voss submitted a sick-call request about "back pain and muscle spasms." The physician again noted that Voss didn't have difficulty walking or getting out of the chair. But this time the physician prescribed 10 mg of cyclobenzaprine and 650 mg of Tylenol indefinitely. Voss says that he was visibly in pain during this visit as well.

### 2. Merits

#### a. Claim against Creel

I will begin with the claim against Creel, who made nearly all of the relevant medical decisions during this time period. Again, the questions are whether Creel acted purposefully, knowingly, or recklessly when he considered the consequences of his actions, and whether Creel's actions were objectively reasonable. *McCann*, 909 F.3d at 886

I conclude that no reasonable jury could find that Creel's decision not to order an MRI or refer Voss to a specialist was objectively unreasonable for many reasons:

(1) Voss's pre-incarceration medical records that Creel reviewed showed nothing that would indicate additional treatment was required;

(2) Creel's own examinations didn't reveal objective evidence of a serious problem;

(3) a hospital physician unaffiliated with the prison or Correct Care determined that Voss was seeking "secondary gain" and wasn't accurately reporting his symptoms;

(4) x-rays and a CT scan of Voss's spine were unremarkable;

(5) Voss's complaints were inconsistent, sometimes focusing on his shoulder and other times focusing on his back;

(6) none of Voss's written medical requests or grievances discuss hip or neck pain, which would explain why Creel didn't address those issues;

(7) Voss reported some benefit for the prednisone that Creel prescribed; and

(8) Voss hasn't adduced any objective evidence available to Creel that would have supported a finding that Voss required more treatment than he received. Based on these undisputed facts, it was reasonable for Creel to determine that neither an MRI nor a referral to a specialist were required.

Voss challenges Creel's decisions on multiple grounds, but none are persuasive. First, Voss says that Creel failed to obtain more of his pre-incarceration medical records, which would have supported his request for outside treatment. Voss signed off on the request for the records, Dkt. 215-1, at 234, and he did not object that the request was too narrow.  Nor does he cite evidence that he complained after the fact about the breadth of the records that Creel obtained. Instead, Voss alleges that he verbally told Creel to ask for additional records and that Creel refused because he Correct Care policy wouldn't allow him to provide more treatment regardless of what the records showed.

The statement Voss attributes to Creel makes little sense. Why would Creel believe that it was appropriate to request some records but pointless to request other records? Voss doesn't say. But even if I assume that Creel should have ordered more of Voss's past medical records, Voss doesn't explain why those records would have made a difference. Although he includes dozens of proposed findings of fact about his past medical treatment, his brief doesn't specifically identify any records that would have provided significant evidence that an MRI or specialty treatment was needed.

19

Second, Voss cites medical records from treatment he received after he was transferred to the custody of the Wisconsin Department of Corrections in February 2017. Specifically, in November 2019, a physician ordered an MRI of his shoulder. *Id.*, ¶ 219.[2] But the fact that one medical provider determined that a particular treatment was appropriate doesn't show that a contrary conclusion was unreasonable. Voss didn't receive an MRI until almost three years after he was taken into DOC custody, so that physician was looking at significantly different information than Creel. At most, this shows a difference of opinion, which isn't enough to show a constitutional violation. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Third, Voss says that he repeatedly told Creel that he was in pain, and that Creel's treatments were ineffective, so Creel should have known that a referral or more tests were needed so that he could better determine an appropriate treatment. But the objective evidence available to Creel at the time didn't support Voss's allegations. It is undisputed that x-rays were taken twice, and both times the results were unremarkable. And a hospital physician who isn't employed by any of the defendants concluded that Voss was malingering. It was reasonable for Creel to rely on these findings in the absence of new evidence to the contrary. Perhaps Creel was wrong in his assessment, but that doesn't show that he violated the Constitution. Even under the more liberal due process standard, "more than negligence or even gross negligence is required for a viable § 1983 claim for inadequate medical care." *James v. Hale,* 959 F.3d 307, 318 (7th Cir. 2020). *See also Zackery v. Mesrobian*, 299 F. App'x 598, 601–02 (7th Cir. 2008) ("Although it may have been prudent for Dr. Mesrobian to order diagnostic testing in 2001, his failure to choose the best course of action does not amount to a constitutional violation.").

---

[2] The MRI showed "mild osteoarthritis." *Id.*, ¶ 220.

Voss says that *other* medical providers both before and after his incarceration at the Marathon County jail have found him to be a "reliable" patient. Dkt. 290, ¶ 251. But even if that is correct, Creel wasn't aware of those assessments, and if even if he were, that again would show only that different providers reached a different opinion. The information available to Creel supported a finding that Voss wasn't providing an accurate description of his condition.

Fourth, Voss relies on Creel's alleged statements acknowledging that Voss needed an MRI but refusing to provide one because of county and Correct Care policies. Creel denies that he made such a statement, but for purposes of summary judgment, I must accept as true Voss's allegation that he did. But the ultimate question isn't about what Creel said; it is whether Creel's actions were objectively reasonable. *See Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (doctor's statements aren't relevant if it his actions were objectively reasonable). For the reasons discussed above, I conclude that they were.

"There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). This principle applies to a decision whether to order an MRI or refer a patient to a specialist. After all, "[a]n MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is a classic example of a matter for medical judgment." *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (internal quotation marks omitted). *See also Ray*, 706 F.3d at 866 (rejecting claim based on failure to order an MRI). Similarly, "[a] prison physician is not required to authorize a visit to a specialist in order to render constitutionally acceptable medical care." *Pyles*, 771 F.3d at 411. *See also Swisher v. Porter Cty. Sheriff's Dep't,* 761 F. App'x 616, 620 (7th Cir. 2019) (rejecting contention that it was objectively unreasonable not to refer detainee to a specialist for foot and back pain). In this case, Creel provided consistent

treatment, and he made adjustments when Voss complained that the treatment was ineffective. Voss may have wanted different treatment, but his disagreement with Creel doesn't amount to a constitutional violation.

### b. Claims against other defendants

Voss's claims against the other defendants are all derivative of his claim against Creel. Voss says that Marathon County, Correct Care, and multiple administrators may be held liable because their policies were the reason that Creel declined to order an MRI or refer Voss to a specialist. And Voss says that La Du-Ives may be held liable because he complained to her about Creel. Because I have concluded that Creel did not violate Voss's rights, his claims against the other defendants fail as well.

## F. December 2016 to February 2017 incarceration at the Lincoln County jail

On December 10 or 11, Voss was transferred to the Lincoln County jail, where he stayed until February 2017. (The parties don't explain the reason for the transfer to Lincoln County.) Voss's claims for this period are essentially the same as his claim during the period between July 2016 and December 2016 at the Marathon County jail: he says that Creel failed to refer him to specialty care and adequately manage his pain as a result of policies by Correct Care and county administrators. But instead of Marathon County administrators, the claim is against Jeff Jaeger (Lincoln County sheriff) and Dave Manninen (Lincoln County jail administrator). Again, the only exhausted claims relate to the failure to order an MRI or refer Voss to a specialist. Voss was a detainee during the first part of this period and a convicted prisoner during the second part. But the legal standard makes no difference to the resolution of this claim, so I will evaluate the claim under a reasonableness standard.

Creel provides medical services at both Marathon County jail and Lincoln County jail, but Creel denies that he had any contact with Voss while he was at the Lincoln County jail. And there are no records showing that Voss complained about his chronic pain during this time.

Voss says that he met with Creel on December 10, 2016, and February 8, 2017. He alleges vaguely that he "informed" Creel of his back, neck, hip, and shoulder pain during those two visits, and that Creel said he could not provide Voss's requested relief because Creel "had to follow the policies of his employer and jail administration." Dkt. 277, ¶ 63. Voss doesn't identify any new information he told Creel, so there is no basis for finding that Creel acted unreasonably. And because Creel cannot be held liable, there is no basis for holding Correct Care or administrators liable either. So I will grant summary judgment to defendants on this claim.

## G. July to August and December 2017 incarceration at the Marathon Count jail

### 1. Background

After Voss's probation was revoked, he was transferred from state prison to the Marathon County jail from July 31 to August 3, 2017. Voss was again incarcerated at the Marathon County jail between December 14 and December 18, 2017. No party says why Voss was transferred to Marathon County for such a short time, but I understand that Voss had court hearings in Marathon County.

Voss is raising two claims related to this time period. First, he says that nurses denied his prescription muscle relaxer and migraine medication because of policies of Marathon County and Correct Care that restricted medication distribution. Second, he says that Holly Maron (a Correct Care nurse) denied his request for a second mattress. These claims are

23

governed by the Eighth Amendment, so the question is whether staff consciously disregarded a serious medical need. *See Johnson v. Doughty*, 433 F.3d 1001, 1007 (7th Cir. 2006).

### 2. Merits

#### a. Restrictions on medication distribution

Voss clarifies in his summary judgment brief that he is not asserting this claim against an individual. Rather, the claim is based on his contention that "he did not receive [medications for muscle spasms and migraines] how his prison doctor prescribed [them] because of a [Correct Care] policy that medications are only prescribed twice daily." Dkt. 274, at 15.

This claim fails because Voss hasn't shown that he was ever wrongly denied either medication. It is undisputed that he consistently received muscle relaxers on a daily basis during the relevant time. *See* Dkt. 289, ¶¶ 191, 199. And Voss admits that he was offered migraine medication, but he declined to take it because he wasn't suffering from a migraine at the time. *See* Dkt. 290, ¶ 321.

Voss's position seems to be that he suffered from migraines and muscle spasms at times in between the scheduled times for distribution. Dkt. 290, ¶¶ 322 and 324. But he doesn't say that he told a staff member that he was experiencing symptoms or that anyone refused a request to provide the medication when he needed it. If Voss never told staff that he needed the medication, then there is no basis for liability. So defendants are entitled to summary judgment on this claim.

#### b. Second mattress

Voss alleges that he asked Maron for a second mattress when he entered the jail on July 31 and again on December 14, and both times Maron refused his request without reason. Dkt. 277, ¶ 69. But this claim fails because Voss hasn't adduced evidence that it was Maron's

responsibility to provide him with an extra mattress, *see Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019), that going a few days without a second mattress deprived him of the minimal civilized measure of life's necessities, *see Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015), or that Maron was aware of information suggesting that Voss had a serious need for a second mattress. Voss says only that he told Maron that he wanted a second mattress and that he experienced "increased" pain because he didn't have one, Dkt. 277, ¶ 69. That's not enough to show an Eighth Amendment violation, so I will grant summary judgment on this claim.

## H.  State-law claims

Voss relies on 28 U.S.C. § 1367 as the basis for exercising jurisdiction over his state-law claims. "Absent unusual circumstances, district courts relinquish supplemental jurisdiction over pendent state law claims if all claims within the court's original jurisdiction have been resolved before trial." *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). I am dismissing all of the federal claims in this case, and neither side identifies any unusual circumstances that would justify a decision to retain jurisdiction over the state-law claims, so I will dismiss those claims without prejudice to Voss refiling them in state court.

## I.  Other motions

Several other motions filed by Voss are before the court: (1) a "motion to deny defendants' summary judgment motions and motion for sanctions/contempt," Dkt. 282; (2) a "motion for sanctions/contempt and to seal a portion of the record," Dkt. 302, along with a motion for leave to file a reply brief in support of Voss's motion for sanctions, Dkt. 314; and (3) a motion to seal a portion of the record, Dkt. 315. Voss also filed a motion to compel discovery more than two months after the parties completed briefing the summary judgment

motions, Dkt. 300, but I stayed briefing on that motion pending a resolution of the summary judgment motions, Dkt. 304.

### 1. Motion "to deny defendants' summary judgment motions and motion for sanctions/contempt"

Voss makes several assertions in this motion: (1) Lincoln County unfairly surprised Voss by contending that defendants Manninen (the jail administrator) and Jaeger (Lincoln County sheriff) weren't aware of his medical problems; (2) Correct Care didn't provide Voss with a formulary list, as he requested in discovery; (3) Voss has been unable to submit copies of medical records showing recommendations that a doctor made after Voss was transferred to the custody of the Wisconsin Department of Corrections; and (4) Voss needs additional discovery so that he can learn the identity of a former nurse who told him that Correct Care "alters medical files when they have been sued," Dkt. 282, at 9. Voss asks the court to stay a decision on summary judgment while the court orders relief that would allow Voss to provide additional evidence.

I will deny this motion because none of the additional evidence that Voss is requesting would make a difference to the outcome of defendants' summary judgment motions. First, Voss's claim against Manninen and Jaeger rests on a view that they knew or should have known that Creel was providing inadequate treatment. But I have dismissed Voss's claims against Creel, so it doesn't matter what Manninen and Jaeger knew or didn't know.

Second, Voss doesn't explain why he wants information about Correct Care's formulary, but I previously concluded that formulary restrictions could be relevant to Voss's claim about a refusal to prescribe certain medications. Dkt. 184, at 7. Correct Care denies that it has any policies prohibiting certain prescriptions, Dkt. 293, but even if it does have such a policy, I

have concluded that Voss's claims about pain medication should be dismissed for reasons that are unrelated to the existence of a policy. Specifically, Voss hasn't adduced evidence that the decision not to prescribe him narcotics in 2015 was unreasonable, he didn't exhaust his available administrative remedies related to decisions about pain management in 2016 or 2017, and he hasn't adduced evidence that he asked anyone for migraine medication or a muscle relaxer when he was experiencing symptoms in 2017. So evidence of formulary restrictions wouldn't make a difference at this point.

Third, the DOC records Voss identifies wouldn't be helpful. Voss submitted proposed findings of fact about his DOC medical records, based on his review of an electronic version of those records, and he often quoted the documents verbatim. *See* Dkt. 277, ¶ 126 and Dkt. 279, ¶ 200–12. Correct Care didn't dispute those facts, so submitting the records to the court would add nothing. More important, as I already discussed, treatment decisions made after Voss was transferred to the DOC don't show that defendants' earlier decisions were unreasonable. So I see no reason to delay the case to give Voss an opportunity to submit more documents.

Fourth, Voss says that he wants the court to order Correct Care to provide him with photographs of former employees so that he can determine the identity of the nurse who told him that Correct Care falsifies medical records. But that request is untimely. Voss doesn't say when he spoke to the former employee, but he discussed the employee in a declaration he filed in February 2020. Dkt. 157, ¶ 6. So if Voss wanted information from Correct Care to help identify her, he should have filed a motion to compel long ago. In any event, Voss acknowledges that the employee did not work at Marathon County jail or Lincoln County jail, so she would have no personal knowledge of *Voss*'s medical records, which are the only records that matter in this case. Voss makes a conclusory allegation that he believes some of his records have been

27

"digitally altered," Dkt. 277, ¶ 5, but he provides no basis for that assertion, and he doesn't identify any specific errors. So the unidentified former employee would have no relevant testimony to provide.

Voss's motion "to deny defendants' summary judgment motions and motion for sanctions/contempt" will be denied.

### 2. "Motion for sanctions/contempt and to seal a portion of the record"

In a 20-page motion, Voss asks the court to sanction Correct Care for the following conduct: (1) preparing medical authorization forms that don't comply with this court's orders; (2) obtaining medical records that go beyond the scope of the authorization forms; (3) filing irrelevant records related to Voss's mental health treatment and then failing to ask the court to seal the records. Voss's requested relief includes entering default judgment against both Correct Care and Marathon County and awarding $250,000 to Voss. Although I stated that a reply brief wasn't necessary, Dkt. 304, Voss filed *two* reply briefs, one of which was 16-pages long, along with two new declarations and hundreds of pages of attachments.

This motion represents another example of Voss squandering the limited resources that he says he has. I'm not persuaded that Voss is entitled to any relief. But I will grant his request to file the uninvited reply briefs because they make no difference to the outcome of his sanctions motion.

None of Voss's arguments require an extended discussion. As for the content of the authorization form, Voss signed the form eight months before he filed his sanctions motion, so, again, the motion is untimely. In any event, I have reviewed the form, Dkt. 303-1, and it is consistent with my previous order, Dkt. 184. The form excludes certain categories of documents as I directed, and it states that defendants "will not disclose any protected health

28

information outside of the legal proceedings." *See* Dkt. 184, at 3 (directing Correct Care to prepare a form that identifies "(1) which records are outside the scope of the release; and (2) the limitations on defendants' permissible use of the records").

As for the records outside the authorization that Correct Care obtained, it is undisputed that Correct Care received those records because *Voss* filed a discovery request with Marathon County for all of his medical records. In response to that request, the county provided Correct Care with a copy of the records it provided to Voss, in accordance with the federal rules, which require discovery responses to be served on all parties. *See* Fed. R. Civ. P. 5(a)(1)(C). If Voss didn't want other parties seeing certain medical records because he believed they were irrelevant, then he shouldn't have asked for those records.

As for Correct Care's decision to file with the court all of Voss's medical records for Marathon County and Lincoln County, Correct Care explained that it wanted to provide the full record so that the court could evaluate the totality of care provided, and also to avoid allegations from Voss that Correct Care was cherry picking the medical records or misrepresenting the care that Voss received. In light of the numerous allegations of dishonest conduct that Voss has lodged against Correct Care, that was not an unreasonable concern. It may not have been absolutely necessary to file all the medical records, but I am not persuaded the decision to do so was sanctionable conduct.

It is true that some of the medical records relate to mental health issues, which are no longer part of the case. For this reason, I believe that it is appropriate to keep the medical records sealed. *See* Dkt. 304 (directing the clerk of court to seal the records at issue pending resolution of Voss's sanctions motion).

Voss says that he is entitled to compensation for the "embarrassment, humiliation, degradation, [and] anxiety" that he has suffered as a result of his invasion of privacy and for the exacerbation of his carpal tunnel syndrome caused by writing his sanctions motion. Dkt. 302, at 19–20. But neither contention is persuasive. To begin with, Voss waited more than six months to object to Correct Care's filings, which significantly undercuts his allegations of emotional distress. In fact, one of the documents that Voss objects to is something that *he* filed in April 2020. *See id.* at 17 (citing Dkt. 186-5). He identifies no specific harm that he has suffered or any reason to believe that anyone other than the litigants and the court viewed the records before they were sealed. As for Voss's allegation that preparing the sanctions motion exacerbated his carpal tunnel syndrome, he has only himself to blame. No one forced Voss to file multiple, lengthy briefs. Voss could have easily resolved the issue simply by asking the court to seal the records months ago.

Voss's motion for sanctions is denied.

### 3.  Motion to seal a portion of the record

Accompanying one of Voss's reply briefs is a request to seal a 163-page exhibit of medical records that he filed with the brief. Voss says that the document includes personally identifiable information, including his Social Security number. I will grant the request for the simple reason that Voss shouldn't have filed the exhibit in the first place. It relates to new issues that Voss raised for the first time in his reply brief, so I haven't considered the exhibit.

### 4.  Motion to compel

Voss's motion to compel relates to the alleged former Correct Care employee who told Voss that Correct Care falsifies medical records. As discussed above, the proposed testimony

wouldn't be enough to defeat defendants' motions for summary judgment, so the motion to compel is denied.

ORDER

IT IS ORDERED that:

1. Defendants' motions for summary judgment, Dkts. 220, 211, and 228, are GRANTED on plaintiff Dante Voss's federal claims. Voss's claims that defendants didn't provide adequate pain medication in 2016 and 2017 or order an MRI for his hip, back and neck, in violation of the Constitution, are DISMISSED without prejudice for Voss's failure to exhaust his administrative remedies. Voss's claims that defendants violated his constitutional rights by refusing to give him narcotics in June and July 2015, order a shoulder MRI, refer him to a specialist, give him his prescribed muscle relaxer and migraine medication, and give him a second mattress, are DISMISSED with prejudice.

2. Voss's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

3. Voss's "motion to deny defendants' summary judgment motions and motion for sanctions/contempt," Dkt. 282, "motion for sanctions/contempt and to seal a portion of the record," Dkt. 302, and motion to compel discovery, Dkt. 300, are DENIED.

4. Voss's motion for leave to file a reply brief in support of his motion for sanctions, Dkt. 314 and his motion to seal a portion of the record, Dkt. 315, are GRANTED. The clerk of court is directed to seal Dkt. 318-6.

Entered January 15, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge